United States District Court
Southern District of Texas
**ENTERED**
March 30, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBIN WAYNE SMITH, (TDCJ #01948750) | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:19-cv-0787 |
| LANNETTE LINTHICUM, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending in this *pro se* state inmate civil rights lawsuit are motions for summary judgment filed by defendant physicians Denise Deshields and Sheri Talley (Docket Entry No. 29) and Lannette Linthicum (Docket Entry No. 31). Plaintiff Robin Wayne Smith filed responses to each motion (Docket Entry Nos. 34 & 35). After Deshields and Tally filed a reply, (Docket Entry No. 36), Smith responded with a sur-reply, (Docket Entry No. 40). The Court has carefully considered the motions, responses, replies, sur-reply, evidence in the record, and applicable law, and concludes as follows.

**I.   BACKGROUND AND CLAIMS**

Plaintiff Robin Wayne Smith ("Smith") is an inmate in custody of the Texas Department of Criminal Justice ("TDCJ"). Smith claims that Dr. Sheri Talley ("Talley"), who serves as the Southern Regional Director of the Texas Tech University Health Sciences Center ("TTUHSC"), violated his Eighth Amendment rights by refusing to approve surgical repair or replacement of his spinal cord stimulator ("SCS") medical

device. He claims that Talley was deliberately indifferent to his serious medical needs because she categorically and repeatedly denied all requests for SCS repair, replacement, or maintenance, regardless of his medical condition or the recommendations of his treating physicians. He also sues Dr. Denise Deshields ("Deshields"), the Executive Medical Director of TTUHSC, and Lannette Linthicum, the Director of the TDCJ Heath Sciences Division, alleging that they failed to intervene or correct the policy evidenced by Talley's categorical denial of medical treatment regarding all SCS procedures, maintenance, replacement, or repair. He seeks declaratory, injunctive, and monetary relief against them in their official and individual capacity.

The medical records reflect that on November 15, 2001, Smith was medically discharged from the United States Marine Corps ("USMC") for chronic pain in his lower left abdomen that was diagnosed as loin pain hematuria syndrome ("LPHS").[1] After pain management with medications failed to control Smith's pain, medical providers at the Veteran's Administration ("VA") determined in 2002 that Smith was a candidate for an SCS for pain management.[2] On September 25, 2002, Smith underwent surgery at the VA North Texas Hospital System to implant his SCS.[3] VA physicians reprogrammed the SCS in 2003, and revised it in 2005.[4] In 2011, the VA approved surgical replacement of the

---

[1] Docket Entry No. 29-4 at 200, Ex. C 199 (Smith's VA medical records). Hereinafter, all citations to Smith's VA medical records will be noted as "Ex. C ---," reflecting the Bates stamped pagination at the bottom of the page in Exhibit C to the Motion for Summary Judgment filed by Dr. Sheri Talley and Dr. Denise Deshields.
[2] Ex. C 163.
[3] *Id.* at 166-67.
[4] *Id.* at 098-99, 144.

2

original device, but the procedure was cancelled due to a conflict in Smith's work schedule and a pending legal issue.[5] He was rescheduled for the surgery when he was arrested and subsequently sentenced to 35 years' imprisonment, without the possibility of parole in August 2014, resulting in a discharge date in 2048.[6]

In September 2014, Smith was transferred into TDCJ custody. The TDCJ medical records show that the SCS was working, at least most of the time, in 2014 and early 2015. In September 2015, Smith requested pain medication to use when the SCS was off.[7] At that time, Smith reported that the SCS was working well but that he was using it for longer periods of time.[8] The provider prescribed ibuprofen 600 mg twice a day for thirty days.[9]

In November 2015, Nurse Practitioner Amanda Watson evaluated Smith for complaints of lower back pain. During the evaluation Smith reported that although his SCS turned on, it did not turn on all the time.[10] Watson referred Smith to general surgery for evaluation of the SCS.[11]

Specialty Clinic Notes reflect that Dr. Brooks evaluated Smith and referred him to TTUHSC pain management services related to the SCS on December 9, 2015.[12] Dr.

---

[5] *Id.* at 037; Docket Entry No. 1 ("Complaint") at 3.
[6] Complaint at 3.
[7] Docket Entry No. 31-2 at 169-70, Ex. B 168-69 (Smith's TDCJ medical records). Hereinafter, citations to Smith's TDCJ medical records will be noted as "Ex. B ---," reflecting the Bates-stamped pagination at the bottom of the page in Exhibit B to the Motion for Summary Judgment filed by Director Lannette Linthicum.
[8] Ex. B 168-69.
[9] *Id.*
[10] *Id.* at 164-65.
[11] *Id.*
[12] *Id.* at 243, 351.

Coleman, who also signed the December 9, 2015 clinic note, referred Smith to pain management for SCS replacement.[13]

On December 22, 2015, Nurse Practitioner Watson examined Smith for chronic left side abdominal pain, which Smith described as a dull pain all of the time.[14] At that visit, Smith reported that he came to the medical clinic daily and turned his SCS on for approximately four hours and occasionally overnight, but that it only worked if he lay down in his bunk and not if he stood up or bent to the side.[15]

On February 1, 2016, Dr. Benjamin J. Leeah ("Leeah"),[16] Northern Regional Medical Director for TTUHSC, conducted a review of Smith's chart based on the referral from general surgery regarding the replacement of Smith's SCS.[17] Leeah noted that, per the unit provider, Smith had access to the SCS remote and turned it "on in the am and off in the pm" and supplemented pain management with ibuprofen.[18] Leeah deferred the surgeons' referrals at that time.[19] Leeah stated that "[g]iven current contract for inmate health services, this SCS is mostly likely level 3 care, i.e. medically beneficial but not medically necessary, and as such would most likely be removed versus replaced and maintained," and that "[n]onetheless, patient may qualify for transport to VA for procedure."[20]

---

[13] *Id.*
[14] Ex. B 164.
[15] *Id.*
[16] Leeah also submitted an affidavit as an unretained medical expert in support of the Motion for Summary Judgment filed by Dr. Sheri Talley and Dr. Denise Deshields. *See* Docket Entry No. 29-1 (Ex. A).
[17] Ex. B 163.
[18] *Id.*
[19] *Id.*
[20] *Id.*

4

On August 16, 2016, Smith saw a provider on a sick call request for lower back pain.[21] He stated that the SCS battery had been at 20% two years before and that he had been approved for surgery at the VA and could get the procedure for SCS repair or replacement done there.[22] The provider referred the case to Dr. Talley for consideration, emailing her that same day.[23] In response, Dr. Talley stated:

> We don't service, place, replace batteries, or remove any of those stimulators. It will still be there when his sentence is over. We don't even have a specialist on contract, such as a pain specialist that he can be sent to anyway. He'll be treated for his chronic pain the same way all of our patients are treated.[24]

In October 2016, Dr. Aillon, another medical provider treating Smith, sought a referral for Smith to obtain a surgical consultation for his SCS replacement. Dr. Talley again refused to refer Smith for a surgical consultation, stating:

> General surgery stated that [patient] didn't have physiological basis for his pain. Pain specialty not available. Treat chronic pain at the local level.[25]

On October 28, 2016, Smith saw Dr. Aillon, complaining of extreme pain in his abdomen that had started at 2 a.m. that morning and that the Meloxicam was not working for the pain.[26] Dr. Aillon noted that Smith was hunched over and had intense pain in his abdomen. Aillon indicated that he would try to coordinate with the VA for replacement of the SCS and noted that he would request a referral for replacement of the SCS.[27]

---

[21] Ex. B 159-60.
[22] *Id.*
[23] *Id.*; *see also* Docket Entry No. 1-1 at 2-3.
[24] Docket Entry No. 1-1 at 2.
[25] Ex. B 252.
[26] *Id.* at 157-58.
[27] *Id.*

On January 9, 2017, Dr. Aillon again requested a referral for a surgical consultation and treatment for Smith regarding the implanted SCS.[28] On January 23, 2017, Dr. Aillon followed up on his second request for Smith, stating in an email: "Please let me know if there is anything else we can do to make this happen w/VA services for the pain stimulator."[29] On February 8, 2017, Dr. Talley denied Dr. Aillon's second request for a surgical consultation or referral to pain services for Smith, stating:

> Care, upkeep, removal of pain stimulators will not occur while offender is in TDCJ. Batteries will not be replaced. Please manage pain according to DMGs.[30]

On April 7, 2017, Dr. Robert Martin examined Smith for complaints of pain, including a new pain to the left of his umbilical area. Dr. Martin noted that Smith's pain was not well controlled with medication and that his SCS was not working.[31] Martin increased the dosage of Tegretol and prescribed carbamazepine, but the carbamazepine was discontinued about ten days later because it caused headaches and dizziness.[32]

On September 7, 2017, Smith saw Dr. Martin about adjusting his medication and getting the remote for his SCS so he could use it when he wanted to. Dr. Martin noted that he would talk to Dr. Talley about the requests. Smith did not appear to be in pain at this visit.[33]

---

[28] Ex. B 248-49.
[29] *Id.* at 242.
[30] *Id.* at 225.
[31] *Id.* at 221-22.
[32] *Id.* at 218-19.
[33] *Id.* at 130-31.

Medical records further reflect that on January 17, 2018, Smith again saw Dr. Martin regarding replacing his SCS.[34] At this visit, Martin noted that Smith tried not to take the tramadol unless he really needed it, and that frequently he only took it once or twice per day. Martin also noted that Smith appeared alert and seemed to move without obvious pain and that he would talk to Dr. Talley about the SCS replacement surgery.[35] The Step Two grievance record from Grievance #2018119359 regarding Smith's complaints of constant pain indicate that Dr. Talley denied the request for a referral for the SCS on February 1, 2018.[36]

On August 27, 2018, Smith saw Dr. Martin again for his abdominal pain and an umbilical hernia, complaining that his SCS stopped working altogether.[37] The progress notes reflect that his pain was treated before with the SCS and tramadol, but that he was now without either form of pain relief.[38] Dr. Martin requested a refill of the tramadol at that visit.[39] On February 26, 2019, Smith saw Dr. Martin again, explaining that his main issue was his SCS that no longer worked, and Dr. Martin submitted another request for a non-formulary prescription for tramadol.[40]

On September 11, 2019, Smith again saw Dr. Martin about his abdominal pain.[41] The medical records reflect that Smith requested more tramadol because the dosage was

---

[34] Ex. B 122-23.
[35] *Id.*
[36] Docket Entry No. 31-1 at 6, Ex. A at 5 (Grievance Records noting that Dr. Talley stated on February 1, 2018 that "Care, upkeep, and/or removal of pain stimulators will not occur while offender is in TDCJ. Batteries will not be replaced. Please manage pain at unit according to policy.").
[37] Ex. B 111-12.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 107-08.
[41] *Id.* at 103-04.

not working, and Smith reported that the pain was more frequent, lasted longer, and the medications did not get rid of his pain.[42] Dr. Martin noted that Smith was alert and did not appear to be in pain at that time, but noted an increased aortic pulse and ordered an abdominal ultrasound to check the size of the abdominal aorta.[43] When Smith saw Dr. Martin a week later, Smith reported that he had to take ibuprofen with tramadol and that the pain medications were not working, so they decided to try Cymbalta.[44]

On October 9, 2019, Smith reported that the Cymbalta was not helping.[45] Dr. Talley reviewed Smith's restrictions, which include a work restriction, no lifting more than 15 pounds, and bottom bunk, and determined that no changes to the restrictions were needed.[46]

On February 10, 2020, Smith came to medical complaining of back pain and that the tramadol did not help.[47] He complained that the pain was so bad that his cellmates had to carry him to his bunk.[48] The provider noted that Smith's blood pressure was elevated probably secondary to pain and that he walked with an antalgic gait.[49] On February 20, 2020, Dr. Martin followed up with Smith, who indicated that he thought the Cymbalta was helping with the pain.[50] On March 13, 2020, Smith requested tramadol in addition to Cymbalta because he said he needed both for the pain.[51]

---

[42] Ex. B 103-04.
[43] Id.
[44] Id. at 101-02.
[45] Id.
[46] Id.
[47] Ex. B 90-91.
[48] Id.
[49] Id.
[50] Id. at 88.
[51] Id. at 85.

In May 2020, Smith complained of a pain at his SCS site, and the provider ordered an x-ray.[52] On June 5, 2020, Smith had a follow-up appointment with Dr. Martin regarding the results of his x-rays.[53] The x-ray results of the SCS showed that a wire had broken at a bend in the wire that looked like a couple of small very faint spiral wires in the space between the broken ends, and Dr. Martin noted that he planned to speak with the Regional Director regarding what could be done at this point.[54]

The most recent medical record submitted by Defendants reflects that on June 22, 2020, Smith requested more medication and increased doses for his pain, which Nurse Practitioner Gregory noted that she was uncomfortable prescribing, particularly when Smith had been on long-term, controlled substances for pain.[55] Gregory referred Smith to a medical doctor for a follow-up.[56]

Smith claims, and Defendants do not dispute, that he is not eligible for parole and his 35-year sentence is not due to be discharged until 2048, about 27 years from now. Smith, who is currently 43 years of age, argues that Talley's policy that "we don't service, place, replace batteries, or remove any of those stimulators" and her insistence that the SCS "will still be there when his sentence is over" constitute a blanket refusal of medical care with deliberate indifference to his serious medical need. In particular, according to Smith and the TDCJ medical records, his SCS is no longer functioning and the medications have lost their effectiveness, leaving him to suffer with uncontrolled pain.

---

[52] Ex. B 76-77.
[53] *Id.* at 71-72.
[54] *Id.*
[55] *Id.* at 68.
[56] *Id.*

Smith additionally contends that the defendants refused his requests to undergo surgical replacement of the SCS through the VA. According to Smith, the VA would perform the surgery at its own cost even though he is a convicted felon in prison.[57] The defendants dispute Smith's allegation, citing federal law that prohibits prisoners from receiving medical care through the VA if the prison is required to provide medical care to its prisoners. *See* 38 C.F.R. § 17.38(c)(5) ("In addition to the care specifically excluded from the 'medical benefits package,' under paragraphs (a) and (b) of this section, the 'medical benefits package does not include the following: . . . (5) Hospital or outpatient care for a veteran who is either a patient or inmate in an institution of another government agency if that agency has a duty to give the care or services"). The defendants, while simultaneously refusing to provide care for Smith's condition, contend that TDCJ is required to provide medical care to its prisoners, and, therefore, the exclusion in 38 C.F.R. § 17.38(c)(5) applies.[58]

On February 10, 2020, the Court granted, in part, the defendants' motion to dismiss claims against them for monetary damages in their official capacity as state employees, but denied the motions as to the individual-capacity claims and Smith's claims for injunctive relief. *See* Docket Entry No. 18.[59] On July 28, 2020, the Court denied Smith's motion for

---

[57] Smith contends that, once discovery has commenced, he will be able to produce evidence that other prisoners who are also veterans have obtained medical care from the VA hospital. Regardless of where it may be obtained, fact issues preclude summary judgment concerning his medical care.

[58] To the extent that Smith seeks to obtain outside medical care from the VA, that issue is immaterial to whether the named Defendants, either directly or through a policy they implemented, were deliberately indifferent to the plaintiff's serious medical issue regarding his SCS.

[59] The Court further noted in its February 10, 2020 Order that Smith's claims regarding the denial of his grievances or claims based on *respondeat superior* were not actionable under 42 U.S.C. § 1983. *Id.* at 7.

leave to amend without prejudice and dismissed the claims against individual defendant Dennis Melton with prejudice for failure to state a claim. Docket Entry No. 37. Talley, Deshields, and Linthicum (collectively, "Defendants") now move for summary judgment, contending that Smith does not raise a fact issue on his Eighth Amendment medical deliberate indifference claims. Smith responds that the medical records show that his SCS has stopped functioning, that the pain medications have stopped being effective for his pain, and that the Defendants have a blanket policy to refuse a medical procedure while an inmate is in custody regardless of his medical need for that procedure and without regard for the duration of his incarceration. Smith contends that a blanket policy categorically denying treatment for an SCS, where that denial will result in requiring him to live in uncontrolled pain for thirty years, is cruel and unusual punishment.

## II. LEGAL STANDARDS

### A. Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). In ruling on

a summary judgment motion, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### B. Qualified Immunity

Public officials acting in the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735 (citation omitted).

## III. DISCUSSION

### A. Medical Deliberate Indifference

A prisoner may succeed on a claim under 42 U.S.C. § 1983 for inadequate medical care if he demonstrates "deliberate indifference to serious medical needs" on the part of prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official acts with the requisite deliberate indifference "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires a finding that the defendant "disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40. A plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citation and internal quotation marks omitted).

Smith claims that Dr. Talley refused to refer him to pain management or surgery to have his SCS repaired or replaced. In response to her motion for summary judgment, Smith argues that Dr. Talley based her decision on a "blanket policy" that prohibited any care, upkeep, repair, or replacement of SCS devices when she stated, without qualification, that "we don't do that."[60] Citing to the medical and grievance records provided by the Defendants, he contends that Dr. Talley was deliberately indifferent to his serious medical need for pain abatement despite the recommendations of several of his treating physicians, who repeatedly requested a referral for him to pain management and for a surgical consult regarding his SCS.

Contrary to Talley's contentions, Smith has raised a fact issue regarding whether Talley's blanket policy of refusing to address any problems with an SCS device and her

---

[60] Docket Entry No. 40 at 2.

13

statement that "it will still be there when his sentence is over" — regardless of his medical need and the duration of his sentence — is more than a mere disagreement about treatment and tends to indicate a fixed, categorical refusal to treat a painful medical condition. Smith points out that several of his medical providers, who performed his physical examinations and afforded him with primary care at the unit level, recommended referral to pain management and an evaluation regarding his SCS, but Talley refused the requests from his providers each time.

Taking the evidence in the light most favorable to the nonmovant and drawing justifiable inferences in his favor, the Court concludes that Smith raises a fact issue about whether Dr. Talley "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster*, 587 F.3d at 770. The medical records reflect that Smith has an existing, albeit now non-functional, SCS implanted in his body that was effective in managing his pain when it was working correctly. Talley's categorical denial of the multiple requests from Smith's medical providers for referral for repair of that device creates triable issues of fact as to whether TTUSCH or TDCJ instituted a policy not to treat SCS issues regardless of the circumstances and whether that policy was implemented in deliberate indifference to an inmate like Smith's serious medical needs. Therefore, the Court finds that summary judgment is also not appropriate as to Deshields and Linthicum, who, as Directors of the health care divisions of their respective institutions, allegedly instituted and authorized this policy. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)

(holding that supervisory officials may be liable if they implemented an unconstitutional policy that resulted in constitutional injury).

### B. Qualified Immunity

As explained above, Smith has raised a fact issue regarding whether Talley acted in deliberate indifference to his medical needs and whether the Defendants created and implemented a categorical policy not to treat medical issues regarding a SCS device that is malfunctioning regardless of the duration of a prisoner-patient's incarceration, in deliberate indifference to an inmate's serious medical needs. At the time of the events in question, it was clearly established that "a prison inmate could demonstrate an Eighth Amendment violation by showing that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). Similarly, it was clearly established that a supervisory official may be held liable for implementing a constitutionally deficient policy that caused constitutional harm. *See Porter*, 659 F.3d at 446. Therefore, at this stage of the case, dismissal based on qualified immunity is not warranted.

### C. Injunctive Relief under the Prison Litigation Reform Act

Defendants contend that Smith cannot meet the standard for obtaining injunctive relief under the Prions Litigation Reform Act ("PLRA"). Under the PLRA, any prospective injunctive relief "shall extend no further than necessary to correct the violation of the Federal right," and a court "shall not grant or approve any prospective relief unless the

court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

As set forth above, Smith raised fact issues regarding an ongoing violation of his constitutional rights in connection with the denial, without qualification, of a referral to evaluate and treat his SCS, and whether there is a policy to deny all such requests, in deliberate indifference to a prisoner's serious medical needs. According to the Defendants, TDCJ has the duty to provide adequate medical treatment to address Smith's medical needs, and, therefore, they argue that Smith's request to go to the VA for treatment for his SCS is not available under federal law. Smith contends that he is asking to be allowed to go to the VA only if it is found that TDCJ does not have the duty to provide treatment for his non-functioning SCS, citing the exception in 38 C.F.R. § 17.38(c)(5) for medical services coverage for veterans like him in cases where the correctional institution has no duty to treat a medical issue. At this stage of the litigation, fact issues preclude summary judgment on whether some form of narrowly-drawn injunctive relief, extending no further than necessary to address the claimed ongoing violation of Smith's constitutional rights, would be appropriate. Therefore, summary judgment on this issue will be denied.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, it is

**ORDERED** that Defendants Dr. Talley and Dr. Deshields's Motion for Summary Judgment, (Docket Entry No. 29), and Defendant Lannette Linthicum's Motion for Summary Judgment, (Docket Entry No. 31), are **DENIED**. It is further

**ORDERED** that Smith shall file any motion for appointment of counsel to assist him in prosecuting this case within 30 days of the date he receives this Memorandum Opinion and Order. It is further

**ORDERED** that this case is temporarily **STAYED** pending consideration of any motion for appointment of counsel. After a decision regarding any motion for appointment of counsel is made, the Court will convene a pretrial scheduling conference and set this case for trial.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____ MAR 3 0 2021 _____.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE